KOZINSKI, Circuit Judge,
dissenting in part:
This term the Supreme Court once again summarily reversed a lower court for failing to appreciate that a state official is protected by qualified immunity unless “every reasonable official [in the defendant’s situation] would have understood that what he is doing violates” a constitutional right. Taylor v. Barkes, — U.S. -, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015) (internal quotation marks omitted). The Court has stressed time and again that, “[w]hen properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.” Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011)). The majority ignores that clear admonition, and imposes personal liability on two child protective service workers whose actions were anything but malicious or incompetent.
Under the majority’s holding, Ellen Wilcox and Linda Kennedy are exposed to liability because they removed a vulnerable baby, B.W., from the care of her mother, Rachel. Rachel was a drug addict who had taken methamphetamine so recently that it was found in her daughter’s blood at the time of the child’s birth. Rachel previously had two other children removed from her custody because of her manifest inability to care for them. She also had no fixed address, and therefore no way of being found, had she left the hospital. Had Rachel absconded with B.W., the baby’s life could well have been in peril.
The majority doesn’t appear to dispute this conclusion; nonetheless it finds there was no “imminent danger of serious bodily harm” to B.W. Rogers v. Cnty. of San Joaquin, 487 F.3d 1288, 1295 (9th Cir.2007). The majority reasons that B.W. “would have very likely remained in the hospital ... while the defendants requested a warrant” due to the informal “hold” the Washoe County Department of Social Services placed on her. Op. at 1194. But, “very likely” is cold comfort when the life of a newborn baby is at stake. In any event, this crucial inference is entirely speculative. The majority fails to hold plaintiffs to their burden of “identifying] affirmative evidence from which a jury could find” a violation of clearly established law. Crawford-El v. Britton, 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (emphasis added).
There simply is no evidence in the record that the informal “hold” would have prevented Rachel from leaving the hospital and taking B.W. with her. It is undisputed that the “hold” didn’t constitute a formal restriction on their movement — in *1203 deed, if it did, then the “hold” itself would have been a seizure. Because the hospital didn’t have the lawful authority to restrain Rachel or B.W., it was at least possible that mother and daughter could have left while a warrant application was pending. Reasonable minds might disagree as to the precise quantum of risk faced by B.W., but, under the circumstances, it was hardly malicious or “plainly incompetent” of Wilcox and Kennedy to temporarily take B.W. out of harm’s way. al-Kidd, 131 S.Ct. at 2085 (internal quotation marks omitted).
We’ve been cautioned numerous times to undertake our qualified immunity analysis “in light of the specific context of the case, not as a broad general proposition.” Brosseau v. Haugen, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam) (internal quotation marks omitted). A test like Rogers that is “cast at a high level of generality” constitutes clearly established law only “in an obvious case.” Id. at 199,125 S.Ct. 596. At the time B.W. was taken into custody, we had never applied Rogers in the context of an especially vulnerable child, like a baby, or in a situation where social workers have no means of locating a child once it leaves their immediate supervision. Rogers alone cannot have placed every reasonable official on notice that taking B.W. into custody was unconstitutional. I worry that future babies will pay with their lives because social workers hesitate to take them into custody based on today’s decision.
Nor am I convinced that the county should be liable under Monell. The few remarks Wilcox and Kennedy made during their depositions, standing alone, don’t support an inference that there is a practice of constitutional violations “so persistent and widespread as to practically have the force of law.” Connick v. Thompson, 563 U.S. 51, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). There is nothing else. I therefore respectfully dissent from Parts III.B.2 and III.B.3 of the majority opinion.